## Matejik v. DeMarco

*Charles V. Stoelker* and *Charles E. O'Connor*, for plaintiff.

*William J. Brady*, for defendant.

KELLEY, J., April 4, 1963.—

## Pleadings and Issues

Plaintiff, Emil Matejik, is in the business of supplying a mobile lunch service to employes of industrial plants in the Philadelphia area. Defendant, Leonard DeMarco, formerly serviced a route for plaintiff consisting of a group of industrial plants in the general area of Sandmeyer Steel Company on Delaware Avenue in Philadelphia and is presently conducting a similar business of his own in competition with plaintiff in the same area.

This action in equity was instituted by plaintiff to enjoin defendant from soliciting, servicing or catering to any of the customers he formerly serviced for plaintiff and from using any of the addresses, contacts or information acquired during his business relationship with plaintiff. The action is based on the theory that plaintiff is entitled to the relief for which he prays because: (1) plaintiff and defendant entered into a lease agreement, dated August 14, 1961, containing a covenant which prohibited defendant from receiving, soliciting or attempting to solicit for a period of three years from the date of termination of the agreement, any customers on the route serviced by defendant for plaintiff; and (2) the customer information is entitled to be protected as a trade secret.

Defendant's preliminary objections to plaintiff's complaint were dismissed and, although no answer had been filed, it was agreed that the hearing on plaintiff's rule to show cause why a preliminary injunction

should not issue should be considered as the final hearing.

Defendant resists plaintiff's demands on the grounds that: (1) the agreement of August 14, 1961, is unenforceable because of a failure of consideration; and (2) the customer information is not entitled to protection as a trade secret.

## Findings of Fact

1. Plaintiff, Emil Matejik, trading as Rich's Wyoming Caterers, is in the business of providing a mobile lunch service to employes of industrial plants in the Philadelphia area and has been so engaged since May, 1957, at which time he purchased such business and equipment from Samuel Zimmerman for the sum of $22,500.

2. At the time of purchase, the business consisted of four routes and at the present time plaintiff's business comprises ten routes.

3. Plaintiff leases a route and a customer list to the individual driver-saleman on each route and in return the driver-saleman purchases his merchandise from plaintiff and pays to plaintiff a percentage of the daily purchases required for his route.

4. In order to develop a new route and obtain new customers, plaintiff observes an industrial area to determine if there are sufficient industrial plants located there to enable a route to be profitable and then plaintiff, his salesmen and the routeman for the area go from plant to plant to solicit customers.

5. Defendant, Leonard DeMarco, was hired by plaintiff in May, 1961, to perform odd jobs and act as a general handyman.

6. In July, 1961, defendant was assigned an area in the northeast section of Philadelphia to develop a route and service customers he might obtain.

7. On August 14, 1961, plaintiff and defendant signed a lease agreement whereby plaintiff was to lease

a route to defendant and supply defendant with a customer list and defendant was to pay plaintiff 15 percent of the daily purchases required for said route plus 4 percent State sales tax on truck rental.

8. The agreement of August 14, 1961, contained a covenant which prohibited defendant from receiving, soliciting or attempting to solicit for a period of three years after termination of the agreement any continued patronage from customers on the route at the date of termination.

9. Plaintiff did not supply defendant with a customer list and defendant was not assigned to a route but rather continued working in the northeast section of Philadelphia soliciting customers and servicing a few customers he had obtained.

10. During the period from August, 1961, to October, 1962, plaintiff demanded and defendant paid a flat fee of $17 per day irrespective of daily purchases required when the agreed-upon rental fee of 15 percent of daily purchases proved unsatisfactory.

11. In September, 1961, the area in northeast Philadelphia was abandoned by plaintiff and on September 5, 1961, defendant began servicing Sandmeyer Steel Company on Delaware Avenue in Philadelphia and soliciting customers in the area.

12. Defendant served and solicited in this area until September 11, 1961.

13. On September 11, 1961, the route in the area consisted of the following locations: Norwalk Truck Lines, Strickland Truck Lines, Philadelphia Trash Yard, Sandmeyer Steel Company, General Grinding Wheel and Royal Rack Service.

14. From September 11, 1961, to September 13, 1961, defendant serviced the above locations with Charles Tapper.

15. On September 14, 1961, Charles Tapper began servicing the above locations alone and defendant

began serving Piasecki Aircraft Corporation in West Philadelphia and soliciting customers in the area.

16. Charles Tapper continued to serve the route in the area of Sandmeyer Steel Company until May, 1962, at which time he terminated his business relationship with plaintiff.

17. During this period the route expanded to include the following locations in addition to those named above: Carrall Steel, Publicker, Cramps Dry Dock, Eastern Ordnance, Fluid Energy and United Machine Company.

18. Defendant was assigned to the above route in May, 1962, and serviced the route until October 12, 1962.

19. During the above period of time, defendant solicited and obtained as customers Main Line Homes and Everite Machine Company.

20. On October 12, 1962, defendant terminated his business relationship with plaintiff.

21. On October 15, 1962, defendant appeared at the above named locations with his own truck and food products and has been competing with plaintiff from that time.

*Discussion*

In order to succeed in this proceeding, plaintiff must establish two things: (1) a legally protectible trade secret; and (2) a legal basis, either a covenant or a confidential relationship, upon which to predicate relief: Wexler v. Greenberg, 399 Pa. 569, 577 (1960); Spring Steels, Inc. v. Molloy, 400 Pa. 354, 363 (1960).

Plaintiff seeks to enforce a covenant, contained in a lease agreement signed by plaintiff and defendant, prohibiting defendant from receiving, soliciting or attempting to solicit for a period of three years from the date of termination of the agreement any continued patronage from customers on the route serviced by defendant at the date of termination.

Defendant was employed by plaintiff in May of 1961 to perform odd jobs and act as a general handyman. In July of 1961, defendant was assigned to an area in the northeast section of Philadelphia to solicit customers in an attempt to develop a profitable route. On August 14, 1961, plaintiff and defendant entered into a lease agreement containing the restrictive covenant in question. The agreement, by its terms, contemplated a business relationship whereby plaintiff was to lease a lunch route and a customer list to defendant in return for defendant's daily payment to plaintiff of 15 percent of the daily purchases required on said route and 4 percent State sales tax on truck rental.

However, no route was leased to defendant nor was any customer list supplied by plaintiff. Defendant continued to work in the northeast section of Philadelphia soliciting business and servicing customers so obtained. He continued working in this manner until September of 1961, and subsequently serviced and solicited customers in other areas, attempting to develop routes until May of 1962, when he was assigned to the route in the area of Sandmeyer Steel Company, a route which he had partially developed. Furthermore, the agreed-upon rental fee was supplanted by a flat rental fee during the period August, 1961, to October, 1962. It is thus apparent that the actual business relationship between plaintiff and defendant was markedly different from that contemplated by the parties at the time of signing the agreement. Plaintiff's failure to render the performance called for by the terms of the agreement constituted a material failure of consideration discharging defendant's duty to observe the restrictive covenant contained in the lease agreement of August 14, 1961: Restatement of Contracts, §274. See also DuMont Pharmacal Co. v. Latinsky, 23 D. & C. 2d 611, 613 (1960).

Plaintiff's reliance on Morgan's Home Equipment Corp. v. Martucci, 390 Pa. 618 (1957), to support his cause of action on the agreement is misplaced. The Morgan case considered the sufficiency of consideration necessary to support a restrictive covenant, not the failure of consideration. The consideration recited in the contract at issue in the Morgan case was the "taking of employment" and the court held that the hiring of defendant as a regular employe as opposed to his former status as a provisional employe was sufficient to make the restrictive covenant valid and enforceable. In the instant case, plaintiff failed to perform his part of the bargained-for exchange.

Furthermore, the names and locations of the industrial plants defendant formerly serviced for plaintiff do not constitute customer information entitled to protection as a trade secret. Plaintiff contends that his expenditure of time and money to develop a profitable route makes the above information a valuable and highly confidential asset. However, plaintiff's own testimony established that the method of securing customers was merely to observe an area to determine the extent of industrial development there present and then proceed to go from plant to plant soliciting business. In addition, not only did plaintiff require the individual routemen to pay a flat rental fee instead of the agreed-upon percentage of daily purchases, thus minimizing plaintiff's initial expenditures, but a great part of the solicitation was performed by the individual routemen.

Thus, it can be seen that plaintiff's initial expenditures in developing a route were minimal, that the names and locations of the various industrial plants were easily ascertainable by observation and that a great part of the initial development of a route was performed by the individual routeman who solicited in the area he serviced. All of these factors militate

against a conclusion that the customer information here involved constitutes a trade secret: Spring Steels, Inc. v. Molloy, supra; Denawetz v. Milch, 407 Pa. 115 (1962); Restatement of Torts, §357, comment (b).

In Haut v. Rossbach, 128 N. J. Eq. 77, 15 A. 2d 227 (1940), affirmed 128 N. J. Eq. 478, 17 A. 2d 165 (1941), the court in considering the above factors in connection with a fact situation analogous to that of the instant case made the following observation which we believe applies equally well to the present case:

"In the case [at bar], we can start with the assumption that most people eat lunch. Wherever there is a large factory, there is a field for the box lunch vendor, even though many of the workers may bring their lunch from home. The existence and location of such factories is known to, or easily discovered by anyone; hence the knowledge which a routeman gains . . . is not a trade secret of his employer."

The customer information plaintiff seeks to protect is at best a general secret of the trade in which he is engaged, not the particular secret of plaintiff, and as such not entitled to the protection afforded trade secrets: Morgan's Home Equipment Corp. v. Martucci, supra. Therefore, in the absence of an express enforceable contract forbidding the solicitation of plaintiff's customers, defendant may compete with plaintiff: Spring Steels, Inc. v. Molloy, supra; Restatement of Agency 2d, §396.

Accordingly, we enter the following

### Conclusions of Law

1. Plaintiff's failure to perform his part of the agreed-upon exchange in the lease agreement dated August 14, 1961, constituted a material failure of consideration.

2. Defendant is under no contractual duty to refrain from receiving, soliciting or attempting to solicit plaintiff's customers.

3. The names and locations of the various industrial plants serviced by defendant during his business relationship with plaintiff are not legally protectible trade secrets.

4. Plaintiff is not entitled to injunctive relief.

### Decree Nisi

And now, to wit, April 4, 1963, it is ordered, adjudged and decreed that plaintiff's complaint is dismissed.

The prothonotary is directed to give notice to the parties, or their attorneys of record, of the filing of the above decree nisi, and if no exceptions be filed within 20 days after filing of the decree nisi, to enter the same as a final decree upon praecipe of defendant.