UNITED AIRCRAFT CORPORATION,
Appellant in No. 17,446,

v.

Henry I. BOREEN, Appellant in
No. 17,447.
(D. C. Civil Action No. 43563)

UNITED AIRCRAFT CORPORATION,
Appellant,

v.

Richard H. MOYER.
(D. C. Civil Action No. 43586)

UNITED AIRCRAFT CORPORATION,
Appellant,

v.

Achille POLLINO.
(D. C. Civil Action No. 43587)

UNITED AIRCRAFT CORPORATION,
Appellant,

v.

John H. KINDREGAN.
(D. C. Civil Action No. 43588)

UNITED AIRCRAFT CORPORATION,
Appellant,

v.

Louis N. POMANTE.
(D. C. Civil Action No. 43589)

UNITED AIRCRAFT CORPORATION,
Appellant,

v.

Stephen MARKOE.
(D. C. Civil Action No. 43590)

UNITED AIRCRAFT CORPORATION,
Appellant,

v.

Eugene C. CONSER.
(D. C. Civil Action No. 43591)

UNITED AIRCRAFT CORPORATION,
Appellant,

v.

Alvin ATTESON.
(D. C. Civil Action No. 43598)
Nos. 17446–17454.

United States Court of Appeals
Third Circuit.

Argued March 4, 1969.

Reargued June 17, 1969.

Decided July 17, 1969.

See also D.C., 296 F.Supp. 1144.

Alan Y. Cole, Cole & Groner, Washington, D. C., for appellant, United Aircraft Corp. (Isaac N. Groner, Washington, D. C., LaBrum & Doak, Philadelphia, Pa., on the brief).

Bernard M. Borish, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for appellees Henry I. Boreen and others (Judah I. Labovitz, Philadelphia, Pa., on the brief).

Before McLAUGHLIN, KALODNER and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

United Aircraft Corporation (plaintiff) brought these diversity actions in

the district court against eight of its former employees. It charged the defendant Boreen with breach of a covenant not to compete. It also asserted claims against all the defendants, claiming wrongful interference with plaintiff's contract rights as well as breaches of fiduciary duty and conspiracy. After final hearing the district court determined that Boreen violated his covenant not to compete and granted injunctive relief, but it decided the other basic issues in favor of the defendants.[1] United Aircraft v. Boreen, et al., 284 F.Supp. 428 (E.D.Pa.1968). The district court, at the request of the parties, reserved jurisdiction over claims relating to trade secrets and damages. However, it made its judgment final as to the matters decided by incorporating the recitals required by F.R.Civ.P. 54(b). Plaintiff appeals and Boreen cross appeals. We turn to the basic facts.

After substantial negotiation plaintiff and Vector Manufacturing Company (Vector) entered into a Plan and Agreement of Reorganization (Plan) dated December 30, 1963, by the terms of which plaintiff acquired substantially all of Vector's assets as a "going concern" in return for shares of plaintiff's stock, having a then market value of $3,600,000. The Plan required Vector to dissolve. Boreen through his stockholdings in Vector was entitled to approximately one-third of the United shares to be distributed. The Plan also required Boreen, as one of the three principals of Vector, to deliver to plaintiff a covenant not to compete. After some changes were made in the terms of two earlier drafts, the covenant in issue was executed by Boreen on February 13, 1964.

Immediately following the acquisition of Vector, plaintiff employed Boreen under a contract at will as Chief Engineer of the Vector Department of the Norden Division as well as Assistant Secretary of plaintiff. When on May 1, 1965, the Vector Department became the Vector Division of plaintiff, Boreen became Vice President of that division. Plaintiff had six other divisions.

Boreen left plaintiff on March 1, 1967. On May 9, 1967, Boreen caused a corporation known as Solid-State Scientific Corporation (Solid-State) to be formed. He became its president and all the defendants subscribed to its shares. Over the course of the next few months following Boreen's departure from plaintiff, the other defendants, who had also been employed at will in the Vector Division, terminated their employment with plaintiff and went to work for Solid-State. These actions were filed shortly thereafter.

### DEFENDANT BOREEN'S APPEAL

#### Enforceability of Boreen's Covenant Not to Compete

We first consider Boreen's appeal attacking the correctness of the district court's finding that Boreen breached his covenant not to compete by working for Solid-State. The covenant provides:

"In order to induce you [plaintiff] to purchase the assets of Vector Manufacturing Company, Inc. ("Vector") pursuant to the provisions of the Plan and Agreement of Reorganization dated December 30, 1963, between you and Vector and in consideration of your agreement to employ the undersigned, the undersigned, being an officer, director and one of the principal stockholders of Vector, hereby agrees that, for a period of five years from the date hereof or from the date the employment of the undersigned by you shall cease, whichever is later, the undersigned will not, without your prior written consent, directly or indirectly, on a full or part-time basis, engage in or perform any services as a principal, partner, substantial stockholder, trustee, officer, director, employee, consultant or otherwise in connection with the

---

1. The court did order a written proposal belonging to plaintiff which was taken by a defendant to be returned to it. Plaintiff's claim that defendants used work time for personal purposes was held to be "of de minimis proportions." We think that the district court's disposition of these matters was proper.

manufacture or sale of any product competitive with the products being manufactured or under development by Vector on the date hereof or which at the time of the termination of the undersigned's employment with you are being manufactured or developed by that portion of your business being carried on with substantially the assets acquired by you pursuant to the said Plan and Agreement of Reorganization."

The district court concluded that Solid-State was manufacturing and selling Solid-State products competitive with those which Vector was manufacturing and developing on February 14, 1964, (covenant execution date), and which the Vector Division of plaintiff was manufacturing and developing on March 1, 1967 (termination date of Boreen's employment). Boreen contends that both conclusions are erroneous.

The parties and the district court directed a great amount of attention to the issue as to the meaning and effect of that portion of the covenant dealing with products being manufactured or developed by Vector at the date the covenant was executed (February 14, 1964). However, we deem it unnecessary to decide this issue if the portion of the covenant applicable to the termination of Boreen's employment is enforceable. We say this because with one exception the subject matter of the covenant relating to Vector products in competition or under development as of the covenant execution date is necessarily embraced by that part of the covenant relating to products in competition as of the termination date of Boreen's employment. The one exception is as to products in competition at the earlier date, but no longer in production at the later date. Since the covenant only speaks to competitive products, we do not understand plaintiff to be seeking relief as to this latter class of products. On this basis it would therefore seem reasonable to direct our attention now only to the restraint applicable at the termination date of Boreen's employment on March 1, 1967. That portion of the covenant reads:

"the undersigned will not without your prior written consent, directly or indirectly, on a full or part-time basis, engage in or perform any service * * * in connection with the manufacture or sale of any product competitive with the products * * * which at the time of the termination of the undersigned's employment with you are being manufactured or developed by that portion of your business being carried on with substantially the assets acquired by you pursuant to the said Plan and Agreement of Reorganization."

Boreen contends that under the "language of the covenant, which is written in the passive voice, the real question is whether the Vector Division of U. A. C. [plaintiff] was on March 1, 1967, being carried on with substantially the assets acquired from V. M. C. [Vector]." He says that plaintiff failed to prove that it was so being carried on. He argues that, to the contrary, such evidence as there is in the record clearly shows that the pertinent portion of plaintiff's business is being carried on with equipment, purchased by plaintiff after it acquired Vector and having a much greater value than that acquired from Vector; that this is so whether the focus is on plaintiff's Vector Division or the Micro-Lab portion thereof.[2]

As we analyze Boreen's argument, he seems to be contending that because plaintiff supplied the Vector Division with large amounts of capital after its acquisition that that Division was no longer "being carried on with substantially the assets acquired from Vector," and, accordingly, that portion of the covenant was no longer enforceable. In considering this contention we note at the outset that the need for new capital for expansion purposes was the very reason

---

2. We agree with the district court's finding that Boreen is not correct in his contention that the covenant should only be considered to be applicable to the Micro-Lab portion of the Division.

Vector approached plaintiff about the acquisition. Under these circumstances Boreen's argument does not commend itself as a prima facie reasonable reading of those words of the covenant.

We think there is an additional important circumstance which tends to negate Boreen's construction of this aspect of the covenant. Boreen was to be employed by plaintiff and, as the district court noted, would be expected to work in that portion of plaintiff's business which became the former Vector going concern. So viewed the covenant was in the nature of a covenant not to compete ancillary to an employment agreement, albeit at will. The plaintiff had a real business interest in preventing Boreen from later "competing" with products being manufactured or developed by that portion of plaintiff's business in which he would be employed at the time he left. This is even more so because of Boreen's admitted expertise in the product field embraced by the Vector Division.

Furthermore, we do not think a reasonable meaning of the language is controlled by the mere use of the passive voice. Rather we believe the evidence strongly suggests that the words of the covenant referring to the assets were intended to identify the portion of plaintiff's business the activities of which would define the limits of the operation of the covenant. This view, in our opinion, is reinforced by the obvious fact that Boreen was expected to be a key figure in the operation of the Division after its acquisition.

Boreen's own testimony adds weight to our construction. He testified that he objected to the general covenant not to compete contemplated by the original draft of the Plan because it was a "blanket covenant." He made it clear that he objected to such a covenant because he had not been given an employment contract and because plaintiff was in so many different businesses his future activities would be broadly restrained under such a covenant if he left plaintiff. Boreen testified he was satisfied when it was altered to refer only to "that portion of the business of United to be carried on with the assets acquired by United under this agreement." We think a reasonable inference from his testimony is that he wanted the restraint to apply only to the department of plaintiff's business where it was fairly assumed he and the Vector going concern would be located. Indeed, we think the use of the word "substantially" in the covenant itself had the effect of preventing plaintiff from spreading the erstwhile Vector going concern over many portions of its business and then attempting to prevent Boreen from engaging competitively in any of those areas if he should terminate his employment. We note, however, that there is no contention that Vector, the acquired going concern, was not substantially intact within the Vector Division of plaintiff at the time Boreen left.

Finally Boreen's situation at the time of the negotiations with United was not that of the usual individual required to exercise a covenant not to compete as a condition of employment. Rather he was a principal in a major transaction in which his financial share amounted to more than one million dollars and of which his future services were an integral part.

We therefore reject Boreen's construction as to the provision of the covenant applicable to the termination of his employment. Since he does not otherwise contend that the covenant is inapplicable to his activities in connection with Solid-State, we conclude that the district court correctly determined that Boreen violated the covenant covering his activities after the termination of his employment.

## PLAINTIFF'S APPEAL

### Interference with Contract Rights

We come next to plaintiff's appeals. It contends that under the controlling Pennsylvania law the defendants were guilty of inducing certain of their number as well as other key employees to breach their employment relationships with plaintiff and that the district court committed error in not so finding.

In Albee Homes, Inc. v. Caddie Homes, Inc., 417 Pa. 177, 207 A.2d 768 (1965), the Supreme Court of Pennsylvania stated that "the offering of employment to a person under a contract, terminable at the will of either, with another [as here] is not actionable in and of itself." The court went on to quote the following language from Morgan's Home Equipment Corp. v. Martucci, 390 Pa. 618, 136 A.2d 838 (1957):

"The systematic inducing of employees to leave their present employment and take work with another is unlawful when the purpose of such enticement is to compete and destroy an integral part of a competitive business organization rather than obtain the services of particularly gifted or skilled employees."

■ Since all the defendants and, so far as appears, all the other employees who left plaintiff to go with Solid-State were employed under a contract terminable at will, the defendants committed no actionable wrong merely by offering employment to each other or to other key personnel. However, as the Martucci case indicates, the setting and purpose of an offer may render it unlawful. But the short answer here is found in the findings of the district court:

1. Boreen left plaintiff without being influenced by any of the other defendants.

2. The other defendants, although unhappy at Vector Division, left to go with Solid-State primarily because they desired to start a new company in which they could participate both in management and in ownership.

3. In leaving Vector Division and thereafter soliciting its employees to work for Solid-State the defendants did not intend to harm plaintiff or put it out of business.

Plaintiff's argument comes down to a quarrel with the findings of the district court. The issue posed—one of motive—is peculiarly subjective. The district court heard the oral testimony of the key witnesses at length. Whether the district court's conclusions be treated as findings of fact or inferences drawn therefrom, we think they are fully justified on the record.[3]

We understand plaintiff also to be making a somewhat different argument based on the finding that Boreen breached his covenant not to compete. Plaintiff says that by leaving to go with Solid-State the defendants other than Boreen enabled him to engage in a competing business contrary to his covenant. This action, it says, constituted an illegal inducement to Boreen to breach his covenant. Plaintiff's point seems to be that if the defendants other than Boreen had not gone with Solid-State, Boreen would not have been able to violate his covenant.

■ Passing over the significance of the fact that all defendants were employed at will, we think the factual findings of the district court again compel the rejection of plaintiff's argument. The district court found that "had the defendants known that Boreen would be breaching his covenant not to compete they surely would not have taken these risks" (i. e., invested their own funds and sacrificed job security). It also found that defendants acted with a good faith belief, on the advice of Boreen's counsel, that Boreen was not in breach of his covenant. Plaintiff quarrels with the right of the district court to rely on this evidence. But we are satisfied that it was permissible for the district court to accept the evidence and to rely on it as one factor in determining whether the other defendants induced Boreen to breach his covenant.

Plaintiff relies heavily on Jacobson & Co. v. International Environment Corp., 427 Pa. 439, 235 A.2d 612 (1967). But that case involved an intentional interference with an existing contractual relation. Here the district court found that the defendants believed in good faith

---

3. No issue is raised on these appeals that defendants solicited plaintiff's former employees to induce them to engage in wrongful conduct, e. g., to disclose plaintiff's trade secrets.

that Boreen's activities would not constitute a violation of the covenant. Jacobson is therefore distinguishable.

### Conspiracy

■■ Plaintiff strenuously presses the proposition that the activities of the defendants possessed all the earmarks of a conspiracy. We think the Pennsylvania law of conspiracy requires, inter alia, a showing of some agreement to commit an unlawful or criminal act or to use such means in doing a lawful act. The district court found that no unlawful or criminal act meaningful to this issue was proven. We think these findings are amply supported by the record. As the district court stated, the fact that the defendants acted in concert and secretly is not sufficient to make actionable that which otherwise would not be.

### Breach of Fiduciary Duty

Plaintiff argues next that the district court committed error in finding that the defendants committed no breach of any fiduciary duty owed to it.

■■ The district court found that, with the exception of Boreen, the defendants secretly participated in the formation of Solid-State while still employed in the Vector Division and that several if not all of them, while still so employed, encouraged other Vector Division employees to join Solid-State. We agree with the district court that Spring Steels v. Molloy, 400 Pa. 354, 162 A.2d 370 (1960) controls this situation. The court there emphasized that in the case of a contract of employment at will the employee is free to leave at any time. But, of more importance, the court cited with apparent approval the following excerpt from Comment (e) of Section 393 of the Restatement of Agency, Second:

"After the termination of his agency, in the absence of a restrictive agreement, the agent can properly compete with his principal as to matters for which he has been employed. See sec. 396. Even before the termination of the agency, he is entitled to make arrangements to compete, except that he cannot properly use confidential information peculiar to his employer's business and acquired therein. Thus, before the end of his employment, he can properly purchase a rival business and upon termination of employment immediately compete * * *."

Since all the individuals were employed at will as in the Spring Steels case, we think that merely in preparing to compete, while still in plaintiff's employ, they were not violating any fiduciary duty owed plaintiff. Indeed, the district court found that Boreen offered to have certain of the defendants stay on with plaintiff as long as they were needed. Plaintiff would distinguish Spring Steels on the grounds that in our case there is a breach of a covenant not to compete as well as other improper and unlawful activities. We do not think plaintiff's grounds for distinguishing the case are tenable here. Under the facts as here found, Boreen's breach of covenant is not attributable to the other defendants, and the other alleged unlawful activities relied upon by plaintiff do not find meaningful support in the findings of the district court.

We therefore affirm the district court's ruling that these defendants were not guilty of any cognizable breach of fiduciary duty.

Other contentions advanced by the parties have been considered. They do not alter the conclusions herein reached.

The judgments of the district court will be affirmed for the reasons given herein.