**R.E. Whittaker Co. v. Offutt**

C.P. of Lawrence County, No. 11794 OF 2008, C.A.; 10055 OF 2009, C.A.

*Michael K. Parrish* and *Dana Basci*, for plaintiffs.
*Stanley M. Stein*, for defendants.

MOTTO, *J.*, April 16, 2013—Before the court for disposition is the defendants' motion for summary judgment. In their motion, the defendants contend that the current state of the record, including the testimony at all prior proceedings and evidence developed by deposition in discovery and otherwise, establishes that there exists no evidence to support any cause of action set forth in the complaints filed in the above captioned cases. The

complaints allege that defendants Offutt and Stephenson breached written and oral contracts of employment and engaged in a conspiracy with defendant Peek to unlawfully compete with plaintiff Whittaker by utilizing Whittaker's confidential and trade secret information, and that in so doing created the corporate defendant, Clear Floor Care, Inc. ("Clear Floor") to unlawfully engage in business in competition with Whittaker.

## Procedural History

Whittaker filed its ten-count complaint against the individual defendants, Offutt, Stephenson and Peek on October 22, 2008. Offutt and Stephenson were former employees of Whittaker. Although Peek was never employed by Whittaker, the complaint alleges that Offutt, Stephenson and Peek engaged in a conspiracy to compete unfairly and unlawfully with Whittaker by using confidential and trade secret information belonging to Whittaker and appropriated by Offutt and Stephenson. According to the complaint, Offutt breached a written employment agreement that contained a two-year no-compete clause and that Stephenson breached an oral employment agreement. Plaintiff further alleged that Offutt, Stephenson and peek were interfering with Whittaker's contractual business relations by having misappropriated Whittaker's trade secrets and confidential business information.

On October 27, 2008 Whittaker filed a petition for preliminary injunction to enjoin defendants from competing with Whittaker and from utilizing the

misappropriated trade secrets and confidential information. Whittaker is engaged in the business of selling carpet cleaning machines and chemicals utilized in its machines. Whittaker has consistently alleged that defendants are seeking to unlawfully compete against Whittaker in the same business and to further that objective have created a corporate entity, defendant Clear Floor Care, Inc. ("Clear Floor") for such purposes.

Defendants' answers denied any misappropriation of trade secrets or confidential information and any unlawful conspiracy, and, further, Peek, being a domiciliary of Georgia and having done no business in Pennsylvania, sought to dismiss the complaint against him for lack of personal jurisdiction.

In December of 2008 this court conducted four days of hearing on plaintiff's petition for preliminary injunction.

On January 13, 2009 Whittaker filed its complaint against Clear Floor with the two actions being consolidated by order dated February 23, 2009.

On April 14, 2009 the court issued its opinion and order which granted plaintiff's petition for preliminary injunction and enjoined the defendants from directly or indirectly engaging in any business which competed with Whittaker; soliciting or attempting to solicit, directly or indirectly, any former or current customer or client, or prospective customer or client of Whittaker; from directly or indirectly soliciting, recruiting or encouraging any employee of Whittaker to terminate employment with whittaker; from using, reproducing, distributing,

transmitting, disclosing, or otherwise transferring in any form directly or indirectly, any of Whittaker's trade secrets or confidential information, and specifically enjoining defendant Offutt from violating specific provisions of the employment agreement dated May 21, 2007 entered into between Offutt and Whittaker.

Defendants appealed the issuance of the preliminary injunction to the Superior Court of Pennsylvania. The court's issuance of the preliminary injunction was affirmed by the Superior Court.

On December 1, 2010 defendants filed a petition to dissolve injunction. After hearing and by order dated December 5, 2011 the court modified the injunction by limiting it to use of Whittaker's trade secrets, including the chemistry and/or formula of whittaker's "Crystal" cleaning products and the compilation of the identity of Whittaker's customers and customers' preferences. Otherwise, the defendants were permitted to engage in competition with Whittaker.

Since the entry of the order granting the initial preliminary injunction, the parties have engaged in substantial discovery having significant relevance to the defendants' pending motion for summary judgment.

## Factual Background

Whittaker is engaged in the business of selling carpet cleaning equipment and a line of chemicals designed to be used in connection with that equipment. Whittaker sells its products throughout the United States, Canada, Mexico, and also sells in South America, Europe, Japan and the

African continent. The Whittaker equipment is known as Roto — Wash carpet cleaning machines, manufactured in Australia, and Scott Labs produces the chemistries for use with that equipment. The cleaning products provided to Whittaker by Scott Labs is known as "Crystal Dry", a trademark name and all of the related cleaning products utilize the word "Crystal".

Offutt became employed by Whittaker as director of sales and executed an employment agreement dated May 22, 2007. Although Offutt's primary responsibility was to manage the sales force, Offutt had access to trade secrets and confidential information relating to all aspects of Whittaker's business. The employment agreement provided for a term of employment beginning June 21, 2007, to continue to June 21, 2008, unless extended by the parties and further providing for the agreement to be automatically renewed for a term of one year commencing on the anniversary of employment. Whittaker decided not to renew the employment agreement, and on May 5, 2008, Offutt was notified that he was not to perform any further service for Whittaker but would be paid through the end of the contract term of one year. Offutt's employment agreement contained a covenant not to compete and a covenant not to solicit any former or current customer or client or prospective customer or client of Whittaker with whom Offutt had material contact for a period of twenty-four months following the termination of employment. The employment agreement also required Offutt to hold confidential information in strict confident and to not utilize confidential information for a period of twenty-four

months after termination of employment, and with regard to trade secrets, to hold such information in confidence as long as such information remained a trade secret under applicable law.

Immediately after being informed that his contract would not be renewed, Offutt and Peek proceeded to make plans to start a new business to compete with Whittaker. Peek contacted the chief operating officer of Roto-Wash to determine if Roto — Wash would sell the same machines as sold to Whittaker direct to Peek. Peek also contacted Scott Labs to solicit Scott Labs to sell cleaning products to Peek. Peek and Offutt created a new corporate entity under the name "Crystal Carpet Systems, L.L.C."

Stephenson began his employment with Whittaker in August of 2001 as an outside sales representative, and in connection therewith, executed the employment handbook which contained a non-disclosure provision relating to trade secrets and confidential information. In connection with his employment as a outside sales representative, Stephenson knew Whittaker's suppliers and the contracts at the suppliers; had direct contact with clients and prospective clients; knew customer preferences; knew sales strategy and was aware of the financial details of gross profit margins. After Offutt ceased to work for Whittaker, and during the summer months of 2008, Stephenson and Offutt discussed Stephenson's participation in creation of the new business created by Offutt and Peek that would compete with Whittaker. During his employment with Whittaker, Stephenson created boxes of hand written notes, which Stephenson removed from the business

premises of Whittaker. The notes in particular contained detailed information relative to customer lists, customer contact and customer preferences, including full contact information for thousands of Whittaker customers and their preferences. In the fall of 2008, Stephenson obtained a western digital passport device designed to copy all the information contained on a computer hard drive to the external western digital passport. Stephenson installed the western digital sync software on the laptop computer provided to him by Whittaker. Utilizing the western digital sync software, an external hard drive device, everything in the network in which the computer is connected can be copied. This software was utilized on September 5, 2008, on September 26, 2008, on October 7, 2008, on October 8, 2008, and lastly on October 12, 2008.

Whittaker maintains its confidential business information in an everest database and an ACT database. The everest database is the main piece of financial software that Whittaker uses for everything from inventory control, payroll, as well as sales orders and related information. The ACT database contained the identities of all of Whittaker's customers.

Stephenson also attached to the laptop computer a more limited external storage device referred to as a "thumb drive".

Whittaker terminated Stephenson on October 13, 2008. In response to Whittaker's request for the return of company property and information, Stephenson returned the thumb drive, a small amount of Stephenson's notes,

the laptop, his desk top computer and Blackberry. After Stephenson's termination, he became formally employed by Defendant Clear Floor Care, L.L.C., which is the same legal entity originally incorporated as "Crystal Carpet Systems, L.L.C.", with the name changed after the filing of the within lawsuit. Clear Floor Care, L.L.C., when established, was owned 47.5 percent by Peek, 47.5 percent by Offutt, and 5 percent by Stephenson.

The defendants have abided by the terms of the original preliminary injunction issued on April 14, 2009 and as modified by order dated December 5, 2011.

## Standard of Review

A motion for summary judgment is authorized by Pa. R.C.P. 1035.2, which provides as follows:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law.

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to the jury.

Summary judgment may be granted only in cases where the record demonstrates that there remains no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005); *Chepkevich v. Hidden Valley Resort, LP.*, 2 A.3d 1134 (Pa. 2010). The moving party bears the burden of proving that no genuine issue of material fact exits. *Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 650 (Pa. Super. 1999). For the purposes of summary judgment, material facts are those which have a direct effect on the outcome of the case. *Kuney v. Benjamin Franklin Clinic,* 751 A.2d 662, 664 (Pa. Super. 2000).

In determining whether summary judgment is appropriate, the trial court is required to review the record in a light most favorable to the non-moving party, in "all doubts as to the existence of a genuine issue of material fact must be resolved in favor of a non-moving party". *P.J.S. v. Pennsylvania State Ethics Commission*, 723 A.2d 174 (Pa. 1999). A trial court should only grant a motion for summary judgment when the facts of record are so clear that reasonable minds could not disagree on the outcome. *Basille v. H & R Block, Inc.*, 761 A.2d 1115, 1118 (Pa. 2000), (citing *Cochrane v. G.A.F. Corp.*, 666 A.2d 245, 248 (Pa. 1995). It is not the function of the court ruling on a motion for summary judgment to weigh evidence and to determine the truth of the matter. *Keenheel v. Pennsylvania Securities Commission*, 579 A.2d 1358, 1363 (Pa. Cmwlth. 1990).

Where the defendant is a moving party, he may make the showing necessary to support the entry of summary

judgment by pointing to materials that indicate that the plaintiff is unable to satisfy any element of his cause of action. *Basille v. H & R Block, Inc.*, Supra, at p. 100. Therefore, if a plaintiff fails to present sufficient evidence of any element of the cause of action, the defendant is entitle to judgment as a matter of law. *Ertel v. Patriot News Co.*, 674 A.2d 1038, 1042 (Pa. 1996).

## Discussion

The general rule is that an employee, after termination of employment, is free to compete with his former employer and engage in a rival business, even though such competition relates to the same business in which the former employee had been involved prior to termination of the employment. *Spring Steels, Inc. v. Molloy*, 400 Pa. 254, 162 A.2d 370 (1960). *Spring Steels* notes that Pennsylvania has adopted comment "e" of §393 of the Restatement (2d) of Agency, which comment provides as follows:

> After termination of his agency, and in the absence of a restrictive agreement, the agent can properly compete with his principal as to matters for which he has been employed. See Sec. 396. Even before the termination of the agency, he is entitled to make arrangements to compete, except that he cannot properly use confidential information peculiar to his employer's business and acquired therein. Thus, before the end of his employment, he can properly purchase a rival business and, upon termination of employment, immediately compete . . .

In *Spring Steels v. Molloy*, 400 Pa. at 363, 162 A.2d at 375, the Supreme Court said the following:

> It is not a phenomenal thing in American business life to see an employee, after a long period of service, leave his employment and start a business of his own or an association with others. And it is inevitable in such a situation, where the former employee has dealt with customers on a personal basis, that some of those customers will want to continue to deal with him in his new association. This is so natural, logical and part of human fellowship, that an employer who fears this kind of future competition must protect himself by a preventive contract with his employee . . .

Thus, competition from former employees is lawful, unless such competition is violative of an enforceable restrictive covenant, or, unless the former employee is unlawfully utilizing the former employers' trade secrets or protected confidential information. Thus, in *BEIC Int'l Inc. v. Global Steel Services, Ltd.*, 791 F. Sup. 489, (E.D.Pa. 1992), the district court held that the employee's individual Rolodex files, even if maintained in a computer file prepared by secretaries employed by the former employer or in a manual file, were not trade secrets of the former employer. The court in *BEIC* relied upon the third circuit decision in *S.I. Handling Systems, Inc. v. Haisley*, 753 F.2d at 1258 which expressly held that an employee's personal business contacts, although made while in plaintiff's employ, are not plaintiff's trade secrets. The third circuit in *S.I. Handling* in turn relied upon *Spring Steels*, citing the quote from *Spring Steels*

above set forth.

A cause of action for misappropriation of a trade secret is governed by the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa.C.S.A. §5301 et.seq. PUTSA defines a "trade secret" as follows:

Information, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that:

(1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use;

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 Pa.C.S.A. §5302

A compilation of a company's clientele or a compilation constituting a list of customers is an asset or value acquired by virtue of efforts and expenditures over a period of time and should be protected as a form of property. *John G. Bryant Co. v. Sling Testing and Repair, Inc.*, 369 A.2d 1164 (Pa. 1977); *A.M. Skier Agency v. Gold*, 747 A.2d 936 (Pa. Super. 2000). Although the identity of customers may be found through public sources such a telephone book, it is the compilation of thousands of customer names with contact information, customer preferences and peculiarized information relative to each customer that would be valuable to competitors and must be protected,

as no public source could be the equivalent of such a compilation. Thus, a compilation of customer data that is not readily available from other sources will qualify as a trade secret. *See Spring Steels, Inc. v. Molloy*, Supra. On the other hand, an employee not subject to a non-compete agreement, is free to solicit customers whose names and other information the former employee retains in his memory. As noted in *Spring Steels v. Molloy*, Supra, it is inevitable that where an employee leaves his employment and starts a business of his own, or an association with others, customers with whom the former employee dealt on a personal basis may want to continue to deal with the employee in his new association after he has left the employer's business and that is to be protected. If the employer fears such competition then he must protect himself with a no-compete clause.

Here, the court concludes that plaintiff has failed to meet its burden to prove that any defendant obtained any trade secret; there exists no evidence that any defendant obtained a compilation of Whittaker's customers and customer data. Whittaker has produced evidence that Stephenson attached the western digital passport device to his laptop computer on several occasions and a thumb drive. Whittaker has contended that Stephenson downloaded customer lists and other confidential information from the everest and ACT databases utilizing the passport or thumb drives attached to his laptop computer. Whittaker has produced evidence that the western digital passport is in fact designed to copy all the information contained on a computer hard drive to the external western digital

passport. The external device is capable of copying the entire contents of a computer and the network to which the computer is attached. However, during the course of discovery, the deposition of Tom Whittaker, the CEO of the plaintiff, revealed that Stephenson's laptop did not have accessibility to the everest database and that only Tom Whittaker and John Sloan, Whittaker's I.T. outside vendor, had access to the everett database remotely through a desktop computer. Additionally, Tom Whittaker testified that once one obtained entry into the ACT database, one could not download or copy information from that database. Thus, although there is evidence that Stephenson attached the external hard drive to the laptop computer, it is established by plaintiff's own CEO and I.T. expert that Stephenson could not have downloaded to the external hard drive any of the information contained in the everest or ACT databases.

Stephenson also had a desktop computer which was in fact connected to the network. No evidence has been produced that the western digital passport or any other external hard drive was attached to the desktop or that there was any effort to download information from the desktop by Stephenson.

Defendants also took the deposition of Mark Stephen Pridon, Whittaker's corporate deposition designee who confirmed Whittaker's testimony that access to the everest digital passport or ACT databases could not be obtained through the use of the laptop computer.

The thumb drive that was attached to Stephenson's

computer worked in a similar way to the western digital passport device and had no more ability to copy information from the everest and ACT databases than the western digital passport.

Information contained on the passport device and thumb drive identified by Stephenson as the ones that he had attached to his laptop computer revealed no contents therein that could be considered to be trade secret or confidential.

The court therefore concludes that Whittaker is unable to prove that Stephenson downloaded customer lists, customer data, or any other information that could be considered trade secret onto any external hard drive device.

Whittaker has alleged that another source of trade secret information misappropriated by Stephenson was the numerous yellow pads which Stephenson created over the years as a Whittaker employee, which he stored in boxes under his desk. Evidence was produced that Stephenson removed the boxes of yellow pads from his office in August of 2008, prior to leaving his employment with plaintiff. When Whittaker demanded that the yellow pads be returned, Stephenson returned eight yellow pads and advised that the remainder of the yellow pads had been destroyed. Other than the eight yellow pads returned, the remaining yellow pads are not available for review as to their contents. In general, the information contained on the yellow pads related to customers with whom Stephenson dealt. It can be expected therefore that these pads would

contain identification of customers, customer preferences, contact information and pricing. There is no indication that these pads contained any information beyond information recorded by Stephenson as to those customers with whom he personally dealt.

The court here concludes that Whittaker cannot prove that Stephenson has possession of boxes of yellow pads that contain trade secret information. Whittaker cannot prove that they currently exist, as Stephenson has testified that he personally destroyed them, nor can Whittaker prove with any degree of specificity the information contained therein. The best description of the information contained in the yellow pads indicate that they contain the identity of some customers of Whittaker, and not any beyond those with whom Stephenson dealt. Tom Whittaker describes Stephenson as a copious note-taker and that he continuously made notes during meetings, phone calls and "pretty much everything" that went on during his day. However, this type of note taking does not rise to the level of a compilation of Whittaker's customer lists. The identification of the customers with whom Stephenson dealt would be no different than Stephenson having knowledge of a customer with whom he has dealt through his own memory. Without a restrictive covenant binding upon him, Stephenson would have every right to call upon those customers once leaving Whittaker's employ.

Whittaker also argues that the identity of Scott Labs as the manufacturer of its carpet cleaning chemical products is a trade secret. However, Whittaker's corporate designee, Mark Pridon, at his deposition acknowledged that Scott

Labs is well known in the industry as a manufacturer of chemical encapsulation fluids to clean carpets. Pridon also acknowledged that once Stephenson left the company, there would be nothing wrong with Stephenson left the company, there would be nothing wrong with Stephenson contacting Scott Labs to request it to manufacture encapsulation products for Stephenson like the ones it manufactures for Whittaker. It is also in evidence that Scott Labs displays its products and manufacturing capabilities at the largest industry trade shows in the country including the well-known ISSA show and the Vacuum Dealers Trade Association show, these shows being well known to businesses and individuals involved in the carpet cleaning industry. Additionally, it is generally held that information as to the identity of a material supplier is not considered a trade secret as that information can be readily learned. *Den-Tal Ez. Inc. v. Seamons Capital Corp.*, 389 Pa. Super. 219, 566 A.2d 1214, 1229 (1989).

Whittaker has argued that the formula for the cleaning fluid utilized in its machines is a trade secret. However, the evidence obtained through discovery reveals that the formula is created by Scott Labs and not by Whittaker. In fact, Whittaker itself does not know the formula. Whittaker advises Scott Labs of what it would like the formula to do when used in its equipment, and Scott Labs develops the formula to fit Whittaker's request. It is impossible for any employee of Whittaker to misappropriate a trade secret as to the formula from Whittaker when there is no knowledge or record of what that formula consists which would be available to any Whittaker employee.

The ability or inability to obtain that formula or have it duplicated for competitive use would be the same for the defendants in this case as it would be for any other competitor that would have had no prior association with Whittaker. Whether Scott Labs has the ability to duplicate this formula for others is an issue that would arise out of the legal relationship between Scott Labs and Whittaker. No evidence has been produced by Whittaker that Scott Labs is under a legal duty to Whittaker to keep the formula confidential. A representative of Scott Labs testified at deposition that the formulas were never given to Whittaker and that Scott Labs considered the formulas to be its intellectual property which Scott Labs manages through a computerized confidential storage and handling system. This witness also testified that the formulas are capable of being reverse engineered using appropriate equipment. Information which may be obtained by reversed engineering has been held not to constitute a trade secret. *Van Product Co. v. General Welding & Fabricating Co.*, 419 Pa. 248, 213 A.2d 769, 776-77 (1965). PUTSA provides that information that may be obtained by proper means is not trade secret information. This includes discovery by "reverse engineering". Reverse engineering consists of starting with a known product and working backward to find the method by which it was developed. See comments to Pennsylvania Trade Secrets Act, 12 Pa.C.S.A. §5302.

Other matters which Whittaker has identified as trade secrets misappropriated by defendants include special customer needs; its prices; customer price discounts;

identify of Roto-Wash as the source of Whittaker's floor cleaning machines; contacts with Gregor Morokutti, agent of Roto-Wash; Whittaker's margins; methods of marketing and doing business, particularly the promotion of "claims" services to carpet manufactures; a brochure describing Whittaker's products; Whittaker's plans to introduce a new floor cleaning machine manufactured by a company other than Roto-Wash; and design of its brushes. Although Whittaker has identified each of the foregoing items as trade secrets, it has not come forth with specific evidence showing why it considers these subjects to be trade secrets, and, in fact, defendants have introduced evidence that these matters are in the public domain. Whittaker's customers are under no obligation to hold their pricing structure in confidence and would therefore be free to disclose that information to a Whittaker competitor. Whittaker provides standard discounts that are based upon the dollar amount of product purchased which are available to customers in general. Whittaker's prices can be obtained on its website. The identity of Roto-Wash as the source of Whittaker's floor cleaning machines is well known in the industry as well as the identity of Gregor Morokutti, the agent of Roto-Wash. As to Whittaker's margins and methods of marketing and its "brochure" there is no evidence that any defendant misappropriated or utilized such information in any manner. There is no evidence that the design of the brushes used on Whittaker's machines is not available upon a simple inspection thereof.

Count I of plaintiff's complaint asserts the cause of action against defendant Offutt for breach of a two-year

post-employment restrictive covenant and the provision of the two-year confidentiality agreement. Although Offutt did not view these provision of the agreement to be enforceable, this court has clearly held that the agreement is enforceable. There is also evidence that clearly shows that Offutt intended to ignore the provisions of the agreement and enter into competition against plaintiff. However, the court enjoined Offutt from doing so before plaintiff suffered any damages and before Offutt engaged in any meaningful competition. The injunction remained in effect for a period beyond the two years required by the agreement. Thus, at this point, the restrictive covenant is no longer enforceable as it has expired and plaintiff can show no damages for a violation thereof.

As to the claim that Offutt obtained or used a trade secret belonging to Whittaker, the court has above explained that Whittaker has failed to show the existence of any trade secret misappropriated by any defendant.

Whittaker also alleges in count 1 that Stephenson breached an oral employment agreement with Whittaker and that he engaged in a course of conduct of planning to sell products in the future to plaintiff's customers or potential customers, divulged confidential and privileged business information and trade secrets, arranged meetings with plaintiff's supplies, vendors, customers, potential customers, representatives and employees and diverted the business of plaintiff by soliciting business and current employees of plaintiff and provided or offered services to plaintiff's customers and potential customers, all of which is alleged to be contrary to the terms of the employee

handbook and company policies.

However, the evidence establishes that Stephenson was in fact an "at will" employee and Whittaker has failed to present the terms of any specific oral agreement relating to any of the matters which Whittaker alleges to be wrongful conduct of Stephenson. It has already been determined in this case as affirmed by the Superior Court that the terms of the employee handbook do constitute a contract. No evidence has been produced by Whittaker that Stephenson actually engaged in a competitive business prior to the issuance of the preliminary injunction. At best the evidence is that Stephenson began planning for the creation of a business competitive to the business of plaintiff, which business was never put into active operation. The court has already explained why there is no evidence that Stephenson or any other defendant misappropriated any trade secret information or in any way made use of any information that could be considered to be a trade secret.

In count 2 of the complaint, plaintiff alleges that Offutt and Stephenson breached fiduciary duties while they were in Whittaker's employ by selling or planning to sell plaintiff's products and services, performing work adverse to plaintiff, disclosing plaintiff's confidential and privileged information and trade secrets and diverting business away from plaintiff in violation of Offutt's employment agreement and Whittaker's employee manual and polices. However, there is simply no evidence that Stephenson or Offutt did anything adverse to Whittaker's business interests or in any way in competition with Whittaker while employed by Whittaker except as to some

evidence that Stephenson engaged in some planning for a competitive business shortly before leaving Whittaker's employ. However, as to such evidence, Stephenson would have engaged in such conduct on his own time and utilizing his own resources. It is clear that under Pennsylvania law an employee is free to plan to sell products and services in competition with those of his former employer, so long as he does so on his own time and does not use the resources of his former employer to do so. *Spring Steels, Inc. v. Molloy*, 400 Pa. 354, 162 A.2d 370 (1960). As above set forth, *Spring Steels, Inc. v. Molloy* adopted comment "e" of §393 of the Restatement (2d) of Agency which has been previously quoted in this opinion, and allows for the employee to make arrangements to compete before termination of his employment.

The plaintiff has identified a number of other items which plaintiff has claimed to be subject to trade secret protection and which were appropriated by defendants, such as corporate strategies, sales plans, supplier names, its carpet cleaning formulas, research and development of new products, gross profit information, supplier information and supplier lists, customer preferences, marketing strategies and miscellaneous financial information. However, plaintiff has not come forward with evidence explaining why these various items are entitled to trade secret protection.

Any of the financial or marketing information that plaintiffs would have been exposed to is simply too general and non-specific or readily available from other sources to qualify as a trade secret. Although plaintiff has

identified customer preferences as a trade secret stolen by defendants, the only evidence of any customer preferences is information as to some customers as to what quantities of product they purchase from plaintiff. There is no evidence of any compilation of preferences of plaintiff's customers.

In count 2 of the complaint, plaintiff alleges that defendants Offutt and Stephenson breached their fiduciary duties to plaintiff while they were employed by plaintiff by selling or planning to sell plaintiff's products and services, performing work adverse to plaintiff, disclosing plaintiff's confidential and privileged information and trade secrets and diverting business away from plaintiff in violation of the Offutt's employment agreement and plaintiff's employee manual and policies. However, the court has already explained that Stephenson was an at will employee and was free to engage in planning to enter into a competitive business while still employed with plaintiff as long as he did so on his own time and with his own resources and that there is no evidence of any trade secrets taken or misappropriated by Offutt or Stephenson. To the extent that Offutt can be considered to have breached his employment agreement, Offutt was enjoined from engaging in any competition with plaintiff for the period of two years required by the employment agreement and beyond and plaintiff can show no damages suffered as the result of any effort made by Offutt to engage in a competitive business. Counts 1 and 2 must also be dismissed against defendant Peek, as Peek was not at any time an employee of plaintiff. Defendant Peek was free to

enter into competition with Whittaker any time he chose. However, Peek cannot be permitted to use any trade secrets misappropriated by Offutt and/or Stephenson in entering into any competitive business. However, the court has above explained that at this juncture there is no evidence that Offutt or Stephenson misappropriated any trade secrets or confidentiality of plaintiff; therefore, there is no evidence that Peek at any time has utilized or attempted to utilize any trade secrets or confidential information of plaintiff. In issuing a preliminary injunction, this court previously found based upon the evidence presented at the preliminary injunction hearing that Peek sent an email to Gregor Morikutti, the CEO of Roto-Wash asking Roto-Wash to sell carpet clearing machines to Peek and that Peek was aware that Whittaker had the sole rights to the Roto-Wash machine. However, the evidence now establishes that plaintiff did not have the sole rights to the Roto-Wash machine. Thus, there was no impediment to peek contacting Morikutti as to any other competitor.

All of the remaining counts of the complaint, including count 4 alleging the misappropriation of trade secrets, must fail once it is determined that there does not exist evidence that any of the defendants misappropriated any trade secrets or confidential information and that there is no evidence of any damages suffered by plaintiff as the result of any conduct of the defendants. In count 3 plaintiff contends that Peek aided and abetted breaches of fiduciary duty by Offutt and Stephenson. In count 5 plaintiff alleges that defendants Offutt, Stephenson and Peek unlawfully interfered with plaintiff's contractual relationships with

Offutt and Stephenson. In count 6 plaintiff alleges that Stephenson and Peek have unlawfully interfered with the business relationships between plaintiff and its customers, suppliers and vendors by encouraging them to terminate their relationships with plaintiff. In count 7 plaintiff alleges that defendants Offutt, Stephenson and Peek have unlawfully interfered with the relationship that plaintiff had with its employees. In count 8 plaintiff alleges that defendants Offutt, Stephenson and Peek had been unjustly enriched. In count 9 plaintiff alleges that defendants Offutt, Stephenson and Peek are liable for conversion of chattel and proprietary information. And in count 10 plaintiff alleges that defendants Offutt, Stephenson and Peek engaged in conspiracy.

For all of the reasons set forth as to why plaintiff cannot sustain at this juncture a cause of action as to count 4, the misappropriation of trade secrets and confidential information, the same analysis applies as to each of the foregoing counts in that there simply is no evidence that defendants engaged in any prohibited conduct, except as to Offutt's attempt to violate the restrictive covenants and prohibitions contained in his employment agreement. However, Offutt was enjoined from carrying out this purpose, and, as a result, plaintiff can show no damages arising out of any conduct of any of the defendants.

The items of damages claimed by plaintiff are attorneys' fees and the cost of the trip by plaintiff CEO, Thomas Whittaker, to Australia to repair his relationship with Roto-Wash. The only cause of action which could lead to a recovery of attorneys' fees is count 4 alleging

misappropriation of trade secrets, which if proven would allow a claim under PUTSA. However, the court has found that there was no misappropriation of any trade secrets and therefore a claim under PUTSA cannot lie. No other count of the complaint could result in an award of legal fees. Insofar as Thomas Whittaker may have made a trip to Australia to repair his relationship with Roto-Wash because of contact made by any of the defendants, particularly defendant Peek, since plaintiff did not have an exclusive contract with Roto-Wash, the trip to Australia was a business decision made to maintain a good relationship with its supplier but not shown to be necessitated because of any wrongful conduct of any defendant. Thus, the cost of that trip is not recoverable.

Plaintiff has argued that summary judgment cannot be granted in this case without violating the "Nanty-Glo" Rule. The *Nanty-Glo* Rule prohibits summary judgment from being based upon testimonial affidavits of a moving party or his witnesses since the credibility of the testimony is still a matter for the jury. *Nanty-Glo v. American Sureties, Co.*, 309 Pa. 236, 238 (1932). However, *Nanty-Glo* does not apply here since summary judgment is not dependent solely upon testimonial affidavits and depositions of defendant's witnesses, but rather is based upon testimony of plaintiff's own agents and witnesses by which plaintiff is bound, and because of the absence of evidence that can support plaintiff's claims of misappropriation of trade secrets and confidential information.

Plaintiff also relies upon the fact that this court granted a preliminary injunction, which was affirmed by the

Superior Court wherein the court found in support of that preliminary injunction that defendants had misappropriated trade secrets or protected confidential information. However, the record presently before the court is much different that the record upon which the court relied on issuing its preliminary injunction. The court's findings in support of a preliminary injunction is not res judicata as to a subsequent motion for summary judgment based upon additional or different evidence. There simply is no support in the applicable rules of civil procedure relating to injunction proceedings or in any case law that the court's research can find that gives any conclusive effect to a preliminary injunction.

Plaintiff also raises a "substantial question" as to whether the passport device produced by Stephenson is the one attached to the computer by Stephenson. However, the evidence presently of record establishes that it was impossible for Stephenson to have downloaded proprietary information by attaching the passport device to his laptop as the laptop did not contain any proprietary information and only Plaintiff's CEO, Thomas Whittaker, had remote access to the databases containing the customer information or other proprietary information. Although there is evidence that Stephenson removed a large quantity of his own handwritten notes from the premises and claims to have destroyed all but a small portion thereof, the result is that it is presently impossible for plaintiff to prove the content of the boxes of notes removed by Stephenson and whether these notes contained any proprietary information, or their continued existence.

## Conclusion

For the reasons set forth above, the court will enter a separate order granting the motion of the defendants for summary judgment and dismissing plaintiff's complaints in their entirety.

## ORDER OF COURT

And now, this 16th day of April, 2013, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered, adjudged and decreed that the defendants' motion for summary judgment is granted and the plaintiff's complaint in each case is dismissed in its entirety. It is further ordered and decreed that the preliminary injunction issued April 14, 2009 and as modified by order of court dated December 5, 2011 is dissolved.